1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAO VAN VY,                                    No. C 05-1560 SI (pr)

          Petitioner,              **ORDER DENYING PETITION FOR**
                           **WRIT OF HABEAS CORPUS**
   v.

SCOTT M. KERNAN, Warden,

          Respondents.
_____/

**INTRODUCTION**

      This matter is now before the court for consideration of the merits of Dao Van Vy's <u>pro se</u> petition for writ of habeas corpus concerning his 2002 conviction.  For the reasons discussed below, the petition will be denied.

**BACKGROUND**

A.    <u>The Crimes</u>

      The following facts are taken from the California Court of Appeal's opinion:

      Petitioner Dao Van Vy was a 16-year old  member of a small Vietnamese gang in San Jose.[1]  Kiet Nguyen, the 20-year old victim, was a member of a rival gang.  Problems between the two gangs became apparent approximately one month prior to the stabbing incident.  Two weeks prior to the incident, a confrontation occurred between the members of the rival gangs.

---

[1]Vy was in the Young Asians gang and the victim, Nguyen, was in the Kings of the Night gang. A third gang, Viet Killers, was a rival of the former and friendly with the latter gang.

On May 27, 2000, Nguyen was at a coffee shop with his friends.  Nguyen noticed that several males, sitting at another table, were staring at him.  Eventually, the group of males left the coffee shop.  Nguyen's friend approached him and informed him that someone outside wanted to talk to him, but warned Nguyen not to go outside.  Nguyen disregarded the advice, went outside, and noticed seven young Vietnamese males waiting for him.  Nguyen was asked whether he was a member of a rival gang and he confirmed his membership.  The seven males then attacked him.  Nguyen was unarmed.

Vy was among the seven attackers.  In an attempt to disguise his identity, he pulled a stocking over his face.  Nguyen testified that when he saw Vy pull the stocking over his face, "I knew I was gone . . . Because I knew he was going to kill me." Cal. Ct. App. Opinion, p. 5. He saw a "shiny object," which he believed was metal, "pull[ed] out from [defendant's] pocket or something, just to the right of . . . where his waist [was]." Id. (brackets in source.)  Vy was the only armed attacker.  Nguyen observed Vy lunging toward him but did not see Vy hit him. Nguyen did not feel himself being stabbed and only realized he had been stabbed when he "looked down and saw [his] guts falling out." Id. (brackets in source.)  The attack ended when Nguyen started running toward the entrance to the coffee shop, holding his wounds.  The attackers, including Vy, ran in the opposite direction.  Nguyen was taken to the hospital where he remained for several weeks.

In a separate incident, Vy attacked Nguyen Nguyen at juvenile hall.  The details of that crime are not described because Vy has not challenged the resulting conviction.

B.    Case History

Vy was charged with attempted murder for the attack on Kiet Nguyen.  See Cal. Penal Code §§ 187, 664(a).  It was alleged that the crime was committed willfully, deliberately, and with premeditation.  See Cal. Penal Code §§ 664, 187, 189.  It was further alleged that Vy committed the crime for the benefit of, at the direction of, and in association with a criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by gang

2

1    members.  See Cal. Penal Code §186.22(b)(1).

2         Vy was also charged with the crime of assault with a deadly weapon for the February 16,

3    2001 assault upon Nguyen Nguyen at juvenile hall.  Sentence enhancements for personal use of

4    a weapon and for a crime committed for a gang were alleged for this crime.  See Cal. Penal Code

5    §§ 186.22, 667, 1192.7.

6         The jury found Vy guilty of attempted murder, with true findings as to both special

7    allegations.  Vy was found not guilty of assault with a deadly weapon , but guilty of the lesser

8    included misdemeanor offense of assault.  The court sentenced Vy to 15 years to life in prison

9    with a concurrent 6-month sentence

10        Vy appealed.  The California Court of Appeal affirmed Vy's conviction in a partially

11   published opinion.  The California Supreme Court denied his petition for review.  Vy then filed

12   this habeas action.

13

14                          **JURISDICTION AND VENUE**

15        This court has subject matter jurisdiction over Vy's habeas action for relief under 28

16   U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged

17   conviction occurred in Santa Clara County, California, within this judicial district.  28 U.S.C.

18   §§ 84, 2241(d).

19

20                                **EXHAUSTION**

21        Prisoners in state custody who wish to challenge collaterally in federal habeas

22   proceedings either the fact or length of their confinement are required first to exhaust state

23   judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

24   highest state court available with a fair opportunity to rule on the merits of each and every claim

25   they seek to raise in federal court.  See 28 U.S.C. § 2254 b), (c).  State judicial remedies have

26   been exhausted for the claims presented in the petition.

27

28

                                      3

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

**DISCUSSION**

Vy asserts four claims in his habeas petition.  First, he contends that the trial court violated his right to due process when it failed to instruct the jury on assault with a deadly weapon as a lesser related offense to attempted murder.  Second, he argues that his right to due process was violated by the jury instruction on motive. Third, Vy contends that the cumulative impact of the instructional errors violated his due process right to a fair trial, even if they did not do so individually.  Fourth, Vy argues that his right to due process was violated because there was insufficient evidence of the "primary activities" for the gang sentencing enhancement.

A.    Failure to instruct on assault with a deadly weapon

At his trial, Vy requested an instruction on assault with a deadly weapon as an uncharged lesser related offense to attempted murder.  The prosecutor opposed Vy's request, arguing that California law does not permit the court to instruct the jury on uncharged related offenses, absent the stipulation of the prosecution.  The trial court agreed with the prosecution and denied Vy's request.  Vy argues that the court's decision to not instruct on the related offense violated his due process rights because the jury was given an "all or nothing" choice of finding him guilty of

1   attempted murder or attempted voluntary manslaughter, on the one hand, or acquittal, on the

2   other hand.

3          On appeal, Vy recognized that under California law, a defendant is not entitled as a matter

4   of right to instructions on an uncharged lesser <u>related</u> offense.  <u>People v. Birks</u> 19 Cal.4th 108

5   (1998).  Vy argued that, because he did not intend to kill the victim, the jury could have found

6   him guilty of assault with a deadly weapon and therefore, should have been instructed on it.  Vy

7   further contended that the rationale of <u>Birks</u> did not apply because, even before the trial, the

8   prosecution knew that evidence supported the lesser related charge of assault with a deadly

9   weapon. Vy also argued that the prosecution consented to the related offense instruction because

10  it requested that the court instruct the jury that it could find Vy guilty of attempted murder

11  "based on his guilt of 'the crime of assault with a deadly weapon.'" Cal. Ct. App. Opinion, p.

12  27.

13         The California Court of Appeal rejected Vy's claim:

14         In *Birks*, *supra*, 19 Cal.4th 108, the Supreme Court reexamined the correctness of its prior
           holding in *People v. Geiger* (1984) 35 Cal.3d 510 (*Geiger*).  The court in *Geiger* had held
15         that "a defendant has a state constitutional right to instructions on uncharged lesser
           offenses, supported by the evidence, which are not necessarily included in the charged
16         offense but merely bear some relationship thereto."  (*Birks*, *supra*, 19 Cal.4th at p. 119.)
           Fourteen years later in *Birks*, the Supreme Court overruled *Geiger*, concluding that it had
17         "represent[ed] an unwarranted extension of the right to instructions on lesser offenses."
           (*Birks*, supra, at p. 112.)
18
           As noted, defendant argues against application of *Birks* because its rationale -- potential
19         unfairness to the prosecution from a requirement that the court instruct, upon a defense
           request, on lesser related, uncharged offenses -- is not present here.  We reject this
20         position.

21         The court's holding in *Birks* was broad-based.  The Supreme Court's reasons were not
           limited to the "fairness to prosecution" ground selected here by defendant. Other rationale
22         for the *Birks* court overruling its prior decision were that *Geiger*: (1) caused uncertainty
           in its implementation by the courts, particularly in determining whether a particular
23         uncharged offense was "related" to the crime actually charged under the facts of the
           particular case (*Birks*, *supra*, 19 Cal.4th at pp. 130-131 & p. 131, fn. 16); (2) "afford[ed]
24         the defense a superior right at trial to determine whether the jury will consider a lesser
           offense alternative, or instead will face an all-or-nothing choice between conviction of
25         the stated charge  and complete acquittal"  (<u>id.</u> at p. 128); (3) "interfere[d] in particular
           with a role traditionally accorded to the People alone, the responsibility to determine the
26         charges" (<u>id.</u> at p. 130); (4) was not followed in most jurisdictions (<u>id.</u> at p. 133, fn. 17);
           and (5) presented "a serious question . . . whether such a right [of the defense to require
27         instruction for an uncharged related offense] can be reconciled with the separation of
           powers clause" in the California Constitution.  (<u>Id.</u> at p. 134.)
28

                                                    5

1
2
3
4
5

> We conclude that the trial court did not err by refusing defendant's request for an instruction concerning the uncharged offense of assault with a deadly weapon. The prosecution did not agree that the instruction would be given, and there is no basis for concluding that it consented to it implicitly and/or was estopped from objecting to the instruction. *Birks* is plainly applicable to the circumstances presented in this case. Defendant's argument – that we read *Birks* as proscribing a related-offense instruction requested by defendant and objected to by the prosecution only where giving it would be unfair to the prosecution – is untenable. There is no basis for construing *Birks* in the narrow manner that defendant suggests.

6   Cal. Ct. App. Opinion pp. 28-29.

7        The California Court of Appeal also rejected the federal constitutional claim based on the

8   rejection of the related offense instruction. The court explained that the U. S. Supreme Court

9   held that a state did not violate due process when it denied instructions requested by a capital

10  defendant on a lesser non-included offense in <u>Hopkins v. Reeves</u>, 524 U.S. 88 (1998). The court

11  noted that the California Supreme Court had determined that <u>Reeves</u> had acknowledged that the

12  Constitution did not require anything more than instruction on lesser included offenses. Order

13  Modifying Opinion And Denying Rehearing, pp. 2-3.

14       The California Court of Appeal's holding was not contrary to, or an unreasonable

15  application of, clearly established federal law. There is no clearly established law that a trial

16  court must instruct on lesser related offenses. The Supreme Court held in <u>Beck v. Alabama</u>, 447

17  U.S. 625 (1980), that an instruction on a lesser included offense must be given in a capital case;

18  however, the law is unsettled as to whether such an instruction must be given in noncapital cases.

19  The Ninth Circuit  has declined to find constitutional error arising from the failure to instruct on

20  a lesser included offense in a noncapital case. <u>Turner v. Marshall</u>, 63 F.3d 807, 819 (9th Cir.

21  1995) (citing <u>Bashor v. Risley</u>, 730 F.2d 1228, 1240 (9th Cir. 1984)).

22       Importantly, Vy's claim here concerns the duty to give an instruction on a lesser <u>related</u>

23  offense. The law on such duty is even more unsettled. Federal law does not support Vy's claim

24  that under this set of facts, a court must instruct on lesser related offenses. To grant Vy's claim,

25  therefore, this court would have to create a new rule. In <u>Teague v. Lane</u> 489 U.S. 288 (1989),

26  the United States Supreme Court held that, with a few exceptions not relevant here, a federal

27  court may not grant habeas corpus relief to a state prisoner based on a rule announced after his

28

conviction and sentence became final.  Here, Vy's conviction and sentence have become final and this court may not create a new rule requiring that an instruction on lesser related offenses must be given.

Notwithstanding the lack of a specific rule requiring the court to instruct on lesser included and lesser related offenses, there is authority that habeas relief is available when the failure to instruct results in a failure to instruct on defendant's theory of the case or so infects the entire trial that the resulting conviction violates due process.  See Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for instruction on simple kidnaping where such instruction was supported by the evidence).  This principle stems from the general rule from the Supreme Court that habeas relief is available when an erroneous jury instruction so infects the entire trial that the resulting conviction violates due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991); Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992) (citing Cupp v. Naughton, 414 U.S. 141, 147 (1973)).  Even assuming that the Supreme Court source of this rule would make it clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1), it would not support relief in this case.  A defendant does not have a right to have the jury hear his specific proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover the defense theory.  Cf. Duckett v. Godinez, 67 F.3d 734, 743 (9th Cir. 1995).

Here, the instructions given did require the finding of a specific intent to kill; thus, Vy was able to and did argue that the element had not been proven and he was therefore entitled to acquittal.  The jury instruction on attempted murder identified the elements to include specific intent, i.e., "[t]he person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."  CT 894; see also CT 897 (if jurors "are not convinced beyond a reasonable doubt that when he did this act he had the specific intent to kill, [jurors] must find the defendant not guilty of the crime of attempted murder and/or attempted voluntary manslaughter"); CT 875 (there must be a union of act and specific intent for attempted murder).  Vy was able to and did argue that he was not guilty of the charged crime.

1   During his closing statements to the jury, Vy's attorney reiterated that if the evidence of specific

2   intent permitted two reasonable interpretations, one of which pointed to Vy having the specific

3   intent to kill and the other pointing to Vy not having the specific intent to kill, the jury then had

4   to adopt the latter.  RT 1109-1110.

5          Vy had no constitutional right to have the jury instructed in a way that was more likely

6   to be helpful to him when the instructions given did allow him to argue his defense theory.  He

7   had no right to have the jury given a compromise option (of assault with a deadly weapon) rather

8   than the all-or-nothing choice it had under the instructions given.  The instructions allowed him

9   to argue he did not act with the requisite specific intent.  Furthermore, the record also does not

10  indicate that the absence of the instruction had a "'substantial and injurious effect or influence

11  in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting

12  Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  Vy is not entitled to writ on this claim.

13

14  B.     Jury instruction on motive

15         Vy also argues that the standard motive instruction given to the jury was erroneous

16  because it reduced the prosecution's burden of proof.  The motive instruction read as follows:

17  "Motive is not an element of the crime charged and need not be shown.  However, you may

18  consider motive or lack of motive as a circumstance in this case.  Presence of motive may tend

19  to establish the defendant is guilty.  Absence of motive may tend to show the defendant is not

20  guilty." CT 852 (CALJIC No. 2.51 (2004 ed.).) Vy contends that CALJIC No. 2.51 implied to

21  the jury that it could infer guilt simply from a finding of motive.

22         Vy argued in the California Court of Appeal that the motive instruction – unlike the

23  instructions about the significance of other circumstantial evidence, such as association with

24  coconspirators, flight after the crime, and mere presence at the crime scene – did not instruct that

25  this circumstance alone was not sufficient to establish guilt.  The California Court of Appeal

26  rejected Vy's argument.  It noted that the California Supreme Court rejected a challenge to

27  CALJIC No. 2.51 in  People v. Snow, 30 Cal.4th 43 (2003).  Snow held that the instruction

28

8

1   specifically advised the jury that motive was not "an element of the crime charged (murder) and

2   need not be shown, which leaves little conceptual room for the idea that motive could establish

3   all the elements of murder.'" Id. at 98.

4          In rejecting Vy's claim, the court relied on an earlier California appellate court decision

5   that had considered CALJIC No. 2.51.  CALJIC No. 2.51 was

6          given for the additional purpose of clarifying that motive is not an element of a crime .
       . . CALJIC No. 2.51 points out that motive (unlike intent) need not be proved.
7      Considering that the instruction is different in this way from the instructions to which
       defendant refers, there is nothing particularly startling or anomalous about the fact that
8      it is phrased differently than the others.  Although the instruction informs the jury that
       motive could tend to show that defendant was guilty, the balance of the instructions made
9      it clear that in order to prove the crime charged all of the elements of each crime must be
       proved.  Since CALJIC No. 2.51 very plainly establishes that motive is not an element of
10     the crimes, it is hard to imagine how a jury might conclude that motive alone would be
       sufficient to establish guilt.  In light of the instructions as a whole it is not reasonably
11     probable the jury would have understood the instruction as defendant urges.

12  Cal. Ct. App. Opinion, p. 32 (quoting People v. Petznick, 114 Cal. App. 4th 663, 685 (Cal. App.

13  2003).   The state court of appeal determined that CALJIC No. 2.51 could not reasonably be

14  construed as having misled the jury to believe that guilt could be inferred from the mere presence

15  of motive.

16         The only way for Vy to obtain federal collateral relief here is by a showing that an

17  instructional error was committed and that such error, by itself, so infected the entire trial that

18  the resulting conviction violated due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).

19  Furthermore, he must demonstrte that such instructional error had a "substantial and injurious

20  effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. at 637

21  (quoting Kotteakos v. United States, 328 U.S. at 776).  Vy has not met these burdens.

22         The California Court of Appeal's adjudication of the claim was not contrary to, or an

23  unreasonable application of, clearly established Federal law. The court reasonably held that the

24  instruction on motive did not imply to the jury that it could find Vy guilty based solely on the

25  finding of motive.  The instruction was a standard motive instruction, unambiguously stating that

26  motive was not an element of the crime and that it need not be shown.  Therefore, irrespective

27  of whether or not it found motive, the jury still had to be convinced that all of the elements of

28

9

attempted murder were proved beyond a reasonable doubt.  The fact that CALJIC No. 2.51 did not parallel instructions on other circumstances did not make it deficient.  The  instructions as a whole clearly required the jury to find that each element of attempted murder was proven to return a guilty verdict. Vy is not entitled to habeas relief based on this claim.

C.     Cumulative impact of the jury instructions

Vy contends that the refusal to give an instruction on assault with a deadly weapon and the use of the standard motive instruction cumulatively had the effect of denying him a fair trial. The California Court of Appeal dismissed this claim, stating that it had previously rejected each of petitioner's three claims of instructional error.   Since no error occurred, there was no prejudice, cumulative or otherwise.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution).  However, where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation. See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002); Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).

The state appellate court's rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law.  The California Court of Appeal reasonably found that there was no single error and, therefore, no cumulative error.  Vy is not entitled to habeas corpus relief on this claim.

1    D.    Sufficiency of the evidence for the gang enhancement

2        Vy contends that his right to due process was violated because there was insufficient

3    evidence to support the sentence enhancement he received for committing a crime for the benefit

4    of a criminal street gang.  Specifically, he contends that there was insufficient evidence that the

5    commission of one or more enumerated crimes was one of his gang's primary activities.  Vy does

6    not challenge the evidence that he was in a criminal street gang known as the Young Asians

7    ("YA").

8        California law provides for a sentence enhancement for crimes committed "for the benefit

9    of, at the direction of, or in association with any criminal street gang."  Cal. Penal Code §

10   186.22(b)(1).  A criminal street gang is defined as "any ongoing organization, association, or

11   group of three or more persons, whether formal or informal, having as one of its <u>primary</u>

12   <u>activities</u> the commission of one or more of the criminal acts enumerated [in § 186(e)(1) - (25)],

13   having a common name or common identifying sign or symbol, and whose members individually

14   or collectively engage in or have engaged in a pattern of criminal gang activity."  Cal. Penal

15   Code § 186.22(f) (emphasis added).   The focus in Vy's case is on the "primary activities" part

16   of the definition.

17       The California Court of Appeal explained that the "primary activities" phrase had been

18   construed by the California Supreme Court to imply that the commission of one or more of the

19   enumerated crimes "'is one of the group's "chief" or "principal" occupations.  That definition

20   would necessarily exclude the occasional commission of those crimes by the group's members'"

21   and the commission of crimes not enumerated.  Cal. Ct. App. Opinion, p. 14 (citations omitted).

22   The element may be shown by "'evidence that the group's members consistently and repeatedly

23   have committed'" the enumerated crimes or by expert testimony that the gang "'was primarily

24   engaged'" in the enumerated crimes.   <u>Id.</u> at 14-15 (citation omitted).   The evidence must,

25   however, show more than a single instance of one of the enumerated crimes.  <u>See id.</u> at 15.

26       The California Court of Appeal rejected Vy's claim on appeal that there was insufficient

27   evidence that his gang had as one of its primary activities the commission of one or more of the

28

11

criminal acts enumerated in California Penal Code § 186(e)(1) - (25).

> The prosecution identified a felony assault occurring on March 4, 2000 (i.e., stabbing of VK member by a YA member), as one criminal act.  Detective Ta--who was highly qualified as an expert on the subject of Vietnamese gangs--testified that YA (Kim) committed another assault with a deadly weapon in May 2000.  The third YA criminal act was the attempted murder of Kiet by defendant charged as count 1.  While defendant challenges the inclusion of attempted murder as a predicate crime, we disagree.  [Footnote omitted.] Furthermore, even were defendant's argument to have merit, it would be of no consequence; plainly, [fellow YA gang member Tai N's felony assault] in the same attack upon the victim, Kiet, is an enumerated offense which can be considered for a "primary activities" element of the gang enhancement statute. . . .

> Viewing the evidence  "in the light most favorable to the prosecution" (*Jackson v. Virginia*, *supra*, 443 U.S. at p. 319), we find that it is sufficient to satisfy the "primary activities" prong of section 186.22(f).  The evidence here shows the existence of three serious, violent crimes by YA gang members that took place over a period of less than three months.  Significantly, two YA stabbings of rival gang members preceded the charged crime by only 12 weeks.

> Defendant urges us to look at the entire two-year period of YA's existence in order to conclude that the gang did not "consistently and repeatedly" engage in predicate criminal acts. [Citation.] Under the circumstances presented here, however, we reject defendant's invitation to essentially "spread out" the predicate crimes over YA's entire existence.  Instead, we find the existence of three violent felonies by a gang as small as YA over less than three months to be sufficient to satisfy the "primary activities" element.  Stated otherwise, the fact that YA's level of criminal activity lay dormant for most of its existence does not preclude a finding that it was a gang under the enhancement statute, where there was evidence of consistent and repeated criminal activity during a short period before the subject crime.  Moreover, the fact that there was evidence elicited from Tai during cross-examination by defense counsel that the YA members did "stuff that 16-year-olds do" does not negate other evidence that YA committed crimes sufficient to satisfy the "primary activities" prong of section 186.22(f)."

Cal. Ct. App. Opinion, pp. 18-19.  The appellate court also noted that the police gang expert had provided "significant expert testimony that YA was engaged in criminal actions that constituted predicate crimes under the gang statute," which established the primary activities element.  Id. at 19.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 US 843 (1993).  Rather, the federal court "determines only whether, 'after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  See id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  The writ

12

1    may be granted only if no rational trier of fact could have found proof of guilt beyond a

2    reasonable doubt.  See Jackson, 443 U.S. at 324; Payne, 982 F.3d at 338.

3          The California Court of Appeal's rejection of Vy's claim was not contrary to, or an

4    unreasonable application of, clearly established Federal law.  The court identified the correct

5    legal standard for reviewing a sufficiency of the evidence claim, and reasonably applied that

6    standard in Vy's case.  See Cal. Ct. App. Opinion, pp. 16-19.  The evidence at trial showed that

7    a YA member stabbed a rival gang member twelve weeks before Vy stabbed Kiet Nguyen,

8    another YA member committed an assault with a deadly weapon less than month before Vy

9    stabbed Kiet Nguyen, and another YA member committed a felony assault during the same

10   attack in which Vy stabbed Kiet Nguyen.  Assault with a deadly weapon or by means of force

11   likely to produce great bodily injury is one of the enumerated offenses.  See Cal. Penal Code §

12   186.22(e)(1).  The evidence showing three felony assaults in three months by a gang of five

13   people was sufficient to establish the primary activities element of the gang enhancement.

14   Although there also was evidence showing that YA may have been dormant until three months

15   before Vy stabbed Nguyen and that  YA's members did "stuff that 16-year-olds do" over the

16   course of its two-year existence, that evidence did not undermine the evidence that YA members

17   committed three enumerated crimes in less than three months.  The evidence was sufficient to

18   support the sentence enhancement.  Vy is not entitled to habeas relief based on this claim.

19

20                                     **CONCLUSION**

21          For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The clerk

22   shall close the file.

23          IT IS SO ORDERED.

24   DATED:  April 18, 2006

25                                          SUSAN ILLSTON
                                           United States District Judge

26

27

28